IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN LEE THOMPSON,          :        CIVIL ACTION NO. **3:CV-04-2547**
                              :
        Plaintiff           :        (Judge Nealon)
                              :
        v.                :        (Magistrate Judge Blewitt)
                              :
PENNSYLVANIA DEPARTMENT OF   :
CORRECTIONS, et al.,          :
                              :
        Defendants     :

## REPORT AND RECOMMENDATION

### I. Background.

On November 24, 2004, Plaintiff, Brian Lee Thompson, currently an inmate at the State Correctional Institution at Rockview ("SCI-Rockview"), filed this civil rights action pursuant to 42 U.S.C. § 1983.[1]  Plaintiff is proceeding *pro se*.  Plaintiff paid the filing fee.  On January 14, 2005, Plaintiff filed an Amended Complaint.  (Doc. 6).   Plaintiff essentially alleges that he has met all of the Pennsylvania Department of Corrections' ("PA DOC") policy requirements for a religious accommodation concerning a hair length exemption, and that Defendants have violated his First Amendment right to free exercise of his religious beliefs by denying his request.  Plaintiff also asserted a claim against Defendants under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, *et seq*.  (Doc. 6, p. 3).

---

[1] The Plaintiff originally filed his action in the Eastern District of Pennsylvania, but it was transferred to this Court on August 6, 2004.  This case was originally assigned to Magistrate Judge Smyser for pre-trial matters, but was re-assigned to the undersigned on December 5, 2005.  *See* 28 U.S.C. § 636(b).

Plaintiff states that he exhausted his DOC Administrative remedies with respect to his claim. (Doc. 6, pp. 2-3). Plaintiff attached several exhibits to his amended pleading, including his Inmate Request to Staff Forms, which in part asked that he be registered as a Rastafarian and that he be placed on the haircut exemption list. Plaintiff also attached a copy of his Inmate Religious Accommodation Request Form, DC-ADM 819, and his grievance, No. 72864, regarding the denial of his request for a hair length exemption, as well as the grievance response and appeals. Plaintiff received a final denial of his grievance. Plaintiff attaches a copy of his Certificate of Membership as a Rastafarian and the DOC Inmate Hygiene and Grooming Policy, DC-ADM-807. (Doc. 6, Attachments).

As relief in his Amended Complaint, Plaintiff seeks compensatory damages and "to be free to practice his religious beliefs" under the RFRA. (Doc. 6, p. 3).

This Court has jurisdiction over this § 1983 civil rights action pursuant to 28 U.S.C. § 1343 (a).

Named as Defendants are: PA DOC; SCI-Rockview; Franklin Tennis, Superintendent at SCI-Rockview; Jeffery Rackovan, Grievance Manager at SCI-Rockview; Thomas Reitz, Head Chaplain; and Sharon Burks, Chief Grievance Officer for the PA DOC. (Doc. 6, p. 1).[2]

---

[2] As Defendants note (Doc. 75, p. 2, n. 1), Plaintiff does not list PA DOC and SCI-Rockview as Defendants in the "Parties" section of his Amended Complaint, but he includes them in his caption, and he included them in the caption in his original Complaint. Defendants also note that Defendant Rackovan's correct title is Assistant to the Superintendent. (*Id*. at n. 2).

Defendants jointly filed their Answer to the Amended Complaint. (Doc. 19). Thereafter, discovery ensued. Following the close of discovery, Plaintiff and Defendants filed their respective Summary Judgment Motions. (Docs. 60 & 63, respectively). Both Summary Judgment Motions have been briefed, have been opposed, and are now ripe for disposition. (Docs. 61, 62, 75, 76, 77, 78, 79, 80, 81, 84 & 87).

Plaintiff and Defendants have also filed their Statements of Undisputed Material Facts ("SMF") as required by Local Rule 56.1, M.D. Pa., as well as their Responses to the other party's SMF. (Docs. 61, 76, 79 & 82). Specifically, both parties filed a numbered response to the other party's SMF, as required by Local Rule 56.1, M.D. Pa. Both parties have filed exhibits in support of their Motions. (Docs. 62 & 77). As stated, Plaintiff's and Defendants' Summary Judgment Motions have been briefed and are ripe.

## II. Motion for Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.*

725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id*.

The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions,

answers to interrogatories and admissions on file" designate "specific facts showing that there is a

genuine issue for trial."  Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence

in the light most favorable to the nonmoving party.  *White v. Westinghouse Electric Company*, 862

F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true

and resolve any conflicts in his favor.  *Id.*, quoting *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985),

*cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.

1976) *cert. denied*, 429 U.S. 1038 (1977).

### III. Section § 1893 Standard.

To establish a claim under Section 1983, two criteria must be met.  First, the conduct

complained of must have been committed by a person acting under color of state law.  This criteria

is met here, since the Defendants are employed by the Pennsylvania Department of Corrections

("PA DOC"), and three (3) Defendants are employed at SCI-Rockview.  The second criteria requires

that the conduct must deprive the complainant of rights secured under the Constitution or federal

law.  *Sameric Corp. of Delaware, Inc. v. city of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998);

*Parratt v. Taylor*, 451 U.S. 527 (1981).  Further, Section 1983 is not a source of substantive rights.

Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536

U.S. 273, 284-85 (2002).[3]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa.).

### IV. Undisputed Material Facts.

As mentioned, both Plaintiff and Defendants have filed their Statement of Undisputed Material Facts ("SMF") in support of their respective Summary Judgment Motions as required.  (Docs. 61 & 76).  *See* Local Rule 56.1, M.D. Pa.  Plaintiff and Defendants have also properly responded to each other's SMF.  (Docs. 79 & 82).  Pursuant to Local Rule 56.1, we shall deem ¶'s 1.-2. of Plaintiff's SMF (Doc. 61) as admitted by Defendants (Doc. 79).  It is undisputed that Defendants have denied Plaintiff's request for a religious accommodation regarding a hair length exemption, and that Plaintiff has complied with the DOC policy regarding such an exemption, *i.e.* DC-ADM 807, the DOC Inmate Hygiene and Grooming Policy.   (Doc. 76, ¶ 1.).[4]  As stated, we also accept Plaintiff's ¶ 5. of his SMF regarding Defendants' status as state actors under § 1983.

According to Defendants' SMF and Plaintiff's Response thereto, it is undisputed that all SCI-Rockview personnel, including Defendants Reitz and Tennis, voted in favor of approving Plaintiff's

---

[3]Plaintiff alleged in his  pleading that the individual Defendants were all employees of the PA DOC.  All individual Defendants, except for Defendant Burks, were employees at SCI-Rockview.  Thus, all Defendants were acting under color of state law. (Doc. 6, p. 1). In their Brief, the individual Defendants acknowledge that they were all employees of the DOC during the relevant times of this case. (Doc. 75, p. 2).  Thus, we agree with Plaintiff's SMF (Doc. 61, ¶ 5.) that it is undisputed that Defendants were state agents.

[4] As Defendants note in their SMF (Doc.  76, p. 1, n. 1), Plaintiff has attached a copy of the DOC Inmate Hygiene and Grooming Policy, DC-ADM 807 and his Inmate Religious Accommodation Request Form to his Brief, Doc. 62, Ex. A & App., p. 5).  As  stated, these exhibits are also attached to Plaintiff's Amended Complaint.  (Doc. 6).

hair length exemption request.  (Doc. 76, ¶ 2. & Doc. 82, ¶ 2.).  *See* Doc. 62, App., p. 4.  Plaintiff's

Request was denied at the DOC Central Office level, and William Harrison, Acting Director of

Bureau of Inmate Services, informed Defendant Tennis of this denial by Memorandum dated

December 23, 2003. (*Id.*, ¶'s 3.).  *See* Doc. 62, App., p. 3.  Plaintiff's Request was denied by the

DOC Central Office based on the assessment that his religious beliefs were not sincere because he

had previously requested a hair length accommodation under a different religion.  (*Id.*, ¶'s 4.).  *See*

Doc. 77, Ex. 1, ¶ 1.[5] Plaintiff was informed of the DOC's decision on January 12, 2004 by Defendant

Reitz.  (*Id.*, ¶'s 5.).  *See* Doc. 77, Ex. 2.  On January 14, 2004, Plaintiff filed a Grievance regarding

the denial of his request for a hair length exemption.  (*Id.*, ¶'s 6.).  It is undisputed that Defendant

Reitz responded to Plaintiff's Grievance  (#72864) and indicated that, since all the proper

procedures were followed, SCI-Rockview was required to abide by the DOC Central Office's

decision.  However, Plaintiff disputes that the proper procedures were followed.  (*Id.*, ¶'s 7.).

Plaintiff appealed the denial of his Grievance  (#72864) to Defendant Tennis, who affirmed the

Initial review decision of his grievance.  (*Id.*, ¶'s 8.).  Plaintiff then appealed to final review his stated

Grievance, and it was denied by Defendant Burks.  (*Id.*, ¶'s 9.).  However, the parties dispute as to

whether the proper DOC policies and procedures were followed with respect to the denial of

Plaintiff's hair length exemption request, and whether Plaintiff was able to show a failure to follow

proper DOC polices and procedures with respect to his request for a hair length exemption. (Doc.

---

[5]Plaintiff admits this paragraph of Defendants' SMF in his SMF, but he states in his SMF
that this is not a material fact. (Doc. 82, ¶ 4.).  We disagree.  We find this fact to be material
and to be properly supported by evidence of record, *i.e.* Defendants' Supplemental Responses
to Plaintiff's Third Set of Interrogatories.  *See* Doc. 77, Ex. 1, ¶ 1.

76).[6]

We find that Plaintiff has properly responded to Defendants' SMF as required by Local Rule 56.1 of M.D. Pa. (Doc. 82). Defendants have offered evidentiary support for their stated factual paragraphs contained in their SMF. (Doc. 77). Therefore, we accept the stated facts contained in Defendants' SMF as uncontroverted, and we incorporate them herein by reference. *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).[7]

## V. Discussion.

We shall first consider Defendants' Summary Judgment Motion, since we find merit to it.[8]

Initially, we find that it is undisputed that Plaintiff exhausted his DOC Administrative remedies.[9]

---

[6]The material undisputed facts contained in the Defendants' SMF, Doc. 76, are supported by the evidence both Plaintiff and Defendants have submitted. Thus, we accept the stated ¶'s of Defendants' SMF's as supported by evidence. Further, Plaintiff has largely admitted them and has failed to controvert them in his response to Defendants' SMF. *See* Local Rule 56.1, M.D. Pa.

We also note that Plaintiff's Amended Complaint had several exhibits attached to it, including Inmate Request to Staff Forms, and Plaintiff's grievance # 72864, along with responses thereto. We further do not find that Plaintiff's exhibits controvert Defendants' exhibits submitted in support to their Brief, Doc. 77. In fact, the exhibits of both parties largely overlap.

[7]*See also Paranich* District Court case at 286 F. Supp. 2d at 447, n. 3.

[8]Plaintiff relies upon his Brief in support of his Summary Judgment Motion (Doc. 62) as his response to Defendants ' Summary Judgment Motion and Brief. Doc. 84, p. 5.

[9]It is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. *Id.* at 230. In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding

A.  *RFRA Claim*

As their first  argument, Defendants state that they are entitled to summary judgment as to

Plaintiff's RFRA claim in his amended pleading since the Third Circuit has held that RFRA is

inapplicable to the States and its employees.  (Doc. 75, p. 5).  We agree with Defendants.

We concur, as Defendants argue (Doc. 75, p. 5), that in *DeHart v. Horn*, 390 F. 3d 262 , 274

(3d Cir. 2004), the Court stated that "[i]n *City of Boerne* [521 U.S. 507 (1997)], the Supreme Court

overturned RFRA as it applied to the States."[10]

In his Summary Judgment Brief, Plaintiff states that he has asserted a claim that Defendants'

conduct has violated his right to free exercise of religion under the First Amendment and Fourteenth

Amendment, as well as under RFRA.  (Doc. 62, p. 6).  We agree with Defendants in their opposition

---

prisons conditions, including  § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.; Woodford v. Ngo,* 126 S. Ct. 2378 (2006).   However, Defendants have the  burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes,* 285 F.3d 287, 295 (3d Cir. 2002).  In this case, Defendants have not asserted the exhaustion issue as an affirmative defense.

[10]The Religious Land Use and Institutionalized Persons Act ("RLUIPA") replaced the RFRA.  *See DeHart v. Horn*, 390 F.3d 262 (3d Cir. 2004).  As this Court noted in *Scott v. Beard*, 2006 WL 2645150, * 3, n. 2:

> 42 U.S.C. § 2000cc-1(a)(1)-(2) [RLUIPA]  provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means."

This Court in *Scott* also noted that the case law has found RLUIPA to be constitutional. *Id*. at * 6., n.5; citing *Cutter v. Wilkinson*, 544 U.S. 709 (2005); *Williams v. Bitner*, 285 F.Supp.2d 593 (M.D. Pa. 2003).

Brief to Plaintiff's Summary Judgment Motion (Doc. 78, p. 4), that they are entitled to summary judgment with respect to Plaintiff's RFRA claim against them since it has been found by the Third Circuit to be inapplicable to the States based on the case of *City of Boerne*. *See DeHart*, 390 F. 3d at 274. Thus, based on *DeHart*, we shall recommend that Defendants' Summary Judgment Motion be granted with respect to Plaintiff's RFRA claim against them.

B.  *Claims against Defendants DOC and SCI-Rockview*

As stated, Plaintiff has included the PA DOC and SCI-Rockview as Defendants in the captions of both his original and amended pleadings. We agree with Defendants that, as state agencies, the DOC and SCI-Rockview are not subject to suit under § 1983.

While Plaintiff can assert § 1983 claims as against officials of the DOC and the prison, the DOC itself, and SCI-Rockview, as state agencies, are not subject to suit under § 1983. *See Poole v. D.O.C.*, 153 Fed.Appx. 816, 818-819 (3d Cir. 2005) (Non-Precedential) (Per Curiam). A state agency is not a person and is not subject to suit under § 1983. Thus, the PA DOC and SCI-Rockview are not proper Defendants in this case. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58 (1989); *Roadcloud v. Pa. Bd. of Probation and Parole*, 2006 WL 83453, * 2 (E.D. Pa.). *See also Fischer v. Cahill*, 474 F. 2d 991, 992 (3d Cir. 1973); *Philogene v. Adams County Prison*, Civ. No. 97-0043, slip op. at p. 4 (M.D. Pa. 1-30-97); *Sponsler v. Berks County Prison*, 1995 WL 92370, at *1 (E.D. Pa.); *Mitchell v. Chester County Farms Prison,* 426 F. Supp. 271, 274 (E.D. Pa. 1976). Thus, Defendants DOC and SCI-Rockview are clearly entitled to a grant of summary judgment in their

favor with respect to Plaintiff's § 1983 claims.[11]

In his Reply Brief in support of his Summary Judgment Motion, Plaintiff states that PA DOC and SCI-Rockview are divisions of Pennsylvania Correctional Industries, a business, and that he has not named Pennsylvania, the State, as a Defendant.  Plaintiff states that State agencies can be persons under § 1893 pursuant to *Monell*.  (Doc. 81, p. 2).   In his Amended Complaint, we do  not find that Plaintiff stated a *Monell* claim as against  Defendants DOC and SCI-Rockview.  We find that, even if Plaintiff did raise a *Monell* claim against Defendants DOC and SCI-Rockview, they would also be  entitled to the entry of summary judgment since Plaintiff has not established a viable *Monell* claim against them.

When a claim against a municipality or governmental entity, such as the Defendants DOC and SCI-Rockview, is based on Section 1983, the entity can only be liable when the alleged constitutional violation implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom.  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978).   A governmental custom for purposes of Section 1983 is defined as "such practices of state officials...[as are] so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691.  Custom can be shown by evidence of knowledge and acquiescence by high-level policy-makers. *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989).  The court must then inquire "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489

---

[11]*See Williams v. Com. of PA*, Appeal No. 03-3534 (3d Cir. 8-16-05), slip op. p. 5 (Pennsylvania Department of Corrections is not a person under § 1983) (Non-precedential).

U.S. 378, 385 (1989).  The policy must be the "moving force" behind the constitutional violation. *Cornfield v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion)).  In this case, with respect to the Plaintiff's Section 1983 claim against  the Defendants  DOC and SCI-Rockview,  the Plaintiff simply alleged in his amended complaint that he has "met all of the [DOC] policy requirements  to practice [his] religious beliefs."  (Doc. 6, p. 3).

"A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between the execution of the policy and injuries suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). The law is clear that liability will not be imposed under § 1983 on a *respondeat superior* or vicarious liability theory.  *See Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991).

"Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict.  A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted).

The Court in *Stoneking v. Bradford Area School District*, 882 F.2d 720, 725 (3d Cir. 1989), held that liability for state officials can arise "from their policies maintained in deliberate indifference to action taken by their subordinates."  According to *Stoneking*, "a plaintiff must do more than show the defendant could have averted her injury and failed to do so.  In order to establish liability a

plaintiff must demonstrate both that the defendant's policy, practice, or custom played an affirmative role in bringing about the [harm] and that the defendant acted with deliberate indifference to that [harm].  In order to establish deliberate indifference on the part of the defendant, 'something more culpable [must be shown] than a negligent failure to recognize [a] high risk of harm' to plaintiffs."  *Id.; Black by Black v. Indiana Area School District*, 985 F.2d 707, 712-13 (3d Cir. 1993) (quoting *Colburn*, 946 F.2d at 1025).

The Defendants DOC and SCI-Rockview are entitled to judgment as a matter of law on the Plaintiff's *Monell* claim he asserts for the first time in his Reply Brief (Doc. 81, p. 2) under a policy, practice, or custom theory of liability.[12]

The Plaintiff submitted evidence that the Defendants DOC and SCI-Rockview had an official policy or custom adopted by a final decision maker with respect to a hair length exemption under DC-ADM 807, the DOC's Inmate Hygiene and Grooming Policy.  (Doc. 6, second to last exhibit).  The DOC also had a Religious Accommodation Form to request an exemption such as a hair length exemption for religious reasons.  (Doc. 62, App., p. 5).  However, Plaintiff has not demonstrated that the Defendants' stated  policy played an affirmative role in bringing about the denial of his hair

---

[12] We agree with Defendants' argument in their opposition Brief to Plaintiff's Summary Judgment Motion that Plaintiff is not entitled to summary judgment on claims that he has not asserted in his Amended Complaint and which he attempts to assert for the first time in his Briefs.  (Doc. 78, p. 5).  We agree with Defendants insofar as we do not find that Plaintiff has raised a *Monell* claim against Defendants DOC and SCI-Rockview in his Amended Complaint.  However, we disagree with Defendants that Plaintiff has not stated claims under the First Amendment and Fourteenth Amendment in his Amended Complaint.  Plaintiff states in his Amended Complaint that Defendants "have abridged against Plaintiffs (sic) Constitutional rights to exercise [his] religious beliefs."  (Doc. 6, Statement of Claim,  p. 3).  Liberally construed, Plaintiff's amended pleading states claims under the First Amendment and Fourteenth Amendment.

length exemption request and that the Defendants acted with deliberate indifference to the denial of his request. Rather, the evidence reveals that Plaintiff's request was denied by the DOC Central Office because it was determined that Plaintiff's religious beliefs were not sincere, since he had previously requested a hair length exemption under a different religion. In his Reply Brief, Plaintiff indirectly admits this fact, but states that "Defendants fail to mention that the request was eight years ago and hair is seen as sacred throughout the Bible." (Doc. 81, p. 2). Notwithstanding Plaintiff's argument that his prior request occurred eight years earlier than his January 29, 2003 request at issue, we do not find, based on the undisputed facts, that Plaintiff has shown that the stated policy played a role with respect to the denial of Plaintiff's request, and that Defendants acted with deliberate indifference to the denial of his request. In short, the undisputed evidence has shown that Plaintiff made an earlier request for a hair length exemption under the DOC policy based on a religion other than Rastafarian, and that his request at issue was denied by the DOC Central Office since it was determined, based on Plaintiff's prior request, that his religious beliefs were not sincere.

In their Reply Brief, Defendants state that, to the extent that Plaintiff is claiming that an alleged violation of a DOC policy is sufficient to support a claim that his Constitutional rights were violated, he "cannot rely on an internal [DOC] procedure to establish a Constitutional violation." (Citations omitted). (Doc. 87, p. 2). In *Davis v. Wigen*, 1995 WL 422790, * 2 (E.D.Pa.), the Court stated that the Sixth Circuit has held that a prison official's violation of BOP regulations "is not, in itself, sufficient to establish a violation of the inmate's Constitutional rights." (Citation omitted). The *Davis* Court then stated that the inmate could not "rely on internal [BOP] procedure to establish a Constitutional violation." citing *James v. Quinlan*, 866 F. 2d 627, 631 (3d Cir.), *cert. denied*, 493

U.S. 870 (1989).  *See also Smith v. City of Phila.*, 1991 WL 34412, *11-*12 (E.D. Pa.)(Police Department's internal guidelines did not establish any Constitutional right for purposes of a § 1983 action).

In our case, we find that the evidence does not show that the DOC failed to comply with its DC-ADM 807 policy; rather, it shows that Plaintiff disagreed with the DOC's determination of the sincerity of his religious beliefs based on his prior hair length exemption request under a different religion.

Therefore, we find that, even if Plaintiff did raise a *Monell* claim, which we do not find that he did, the Defendants DOC and SCI-Rockview are entitled to summary judgment with respect to the Plaintiff's *Monell* claim.  Further, based on *Will, supra*, the Pennsylvania DOC and SCI-Rockview, as state agencies, are not subject to suit under § 1983.  Thus, we will recommend that summary judgment be entered in favor of the Pennsylvania DOC and SCI-Rockview with respect to all of Plaintiff's § 1983 claims against them.

C.  *Claims against Defendants Reitz and Tennis*

Defendants argue that the Defendants Reitz and Tennis are entitled to summary judgment since the undisputed evidence shows that they both voted in favor of granting Plaintiff's request for a hair length exemption.  Indeed, Plaintiff's own evidence shows that Defendants Tennis and Reitz approved of Plaintiff's request for religious accommodation in the nature of a hair length exemption. Defendant Reitz stated that Plaintiff "is a registered Rastafarian and has been since August of 2002. He has all the necessary documentation.  He also seems quite sincere in his beliefs and the practicing of his religion."  Defendant Tennis then approved of Plaintiff's stated request.  (Doc. 62,

14

App. p. 4).  Defendants state that neither Defendant Tennis not Defendant Reitz played any role in the DOC Central Office's decisions to ultimately deny Plaintiff's stated request.  Defendants state that Tennis and Reitz had no authority to ignore the decision of the Central Office.  Thus, Defendants state that Tennis and Reitz lack the required personal involvement with respect to Plaintiff's claim that his First Amendment rights were violated. (Doc. 75, p. 6).  Plaintiff seems to agree that Defendant Reitz lacks the requisite personal involvement with respect to a violation of his Constitutional rights, since he acknowledges that Reitz found that Plaintiff had a sincere religious belief.  (Doc. 81, p. 2). As mentioned, Plaintiff's own evidence shows that Defendant Reitz found Plaintiff to be quite sincere in his religious beliefs with respect to his hair length exemption request. (Doc. 62, App., p. 4).  However, Plaintiff argues that Defendant Tennis's decision to uphold the DOC Central Office's decision is enough to hold him liable in this case, since this Defendant did not have the authority under RFRA, the the First Amendment, and the Fourteenth Amendment to willingly ignore the violations of his religious beliefs.  (Doc. 81, p. 2).

We concur with Defendants that neither Tennis (Doc. 87, pp. 2-3) nor Reitz had sufficient personal involvement with respect to Plaintiff's claims that his Constitutional rights were violated. The undisputed fact is that both of these Defendants approved of Plaintiff's religious accommodation request, and that the DOC Central Office denied his request.  (Doc. 62, App., pp. 3-4).  It is also undisputed that neither Reitz nor Tennis played any role in the decision of the Central Office.

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt*,

*supra.* It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A Defendant prison official cannot be held liable for the actions of others since the doctrine of *respondeat superior* is not an acceptable basis for civil rights liability. *See Durmer v. O'Carroll*, 991 F. 2d 64, 69 (3d Cir. 1993). *See also Sutton v. Rasheed*, 323 F. 3d 236, 257-258 (3d Cir. 2003) ; *Poole, supra*.

Therefore, we shall recommend that summary judgment be entered with respect to Plaintiff's claims against Defendants Tennis and Reitz.

D. *Claims against Defendants Regarding their Responses to Plaintiff's Grievance*

Next, Defendants argue that, to the extent that Plaintiff is claiming the Defendants violated his Constitutional rights regarding their responses to his grievance (Doc. 62, p. 8), they are entitled to summary judgment. (Doc. 75, p. 7).

A prison official's response or lack thereof to an inmate's Administrative remedies is not sufficient alone to hold the official liable in a civil rights action. The law is well-settled that there is

no constitutional right to a grievance procedure. *See Jones v. North Carolina Prisoners' Labor Union, Inc.* 433 U.S. 119, 137-138 (1977). This very Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential). Even if the prison provides for a grievance procedure, as the BOP does, violations of those procedures do not amount to a civil rights cause of action. *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd 74 F. 3d 1226 (3d Cir. 1995). *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa. (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra.*

In light of the well-settled case law of this District, we agree with Defendants that they are entitled to summary judgment with respect to Plaintiff's claim regarding their responses to his grievance. The Defendants involved with Plaintiff's grievance are Tennis, Rackovan, Reitz and Burks.

> *E. Claims under First Amendment, the Fourteenth Amendment and RLUIPA against Individual Defendants*

As stated, in liberally construing Plaintiff's Amended Complaint, we agree with Plaintiff (Doc. 62, p. 6 & Doc. 81, p. 2) that he stated a Constitutional claim under the First Amendment and the Fourteenth Amendment that his right to religious freedom was violated by Defendants. Plaintiff also clearly raised a Constitutional claim of a violation of his his right to freedom of religion under the First Amendment in the grievance he filed regarding his claims in this case. (Doc. 6, attached 1-14-

04 Grievance, No. 72864).

Plaintiff recognizes that RFRA was deemed unconstitutional with respect to its applicability to States. (Doc. 81, p. 1). He states that RFRA has been replaced by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.* (*Id.*, pp. 1-2).[13] Plaintiff also states in his Reply Brief "wrong name, right statute." (*Id.*, p. 2). Plaintiff states that he asserted a claim of constitutional violations, as well as a claim under RFRA. (*Id.*). In *DeHart*, 390 F. 3d at 273, the Court found that RLUIPA did not enact a new substantive standard of review for an inmate's religious claim. The *DeHart* Court held that, since the inmate exhausted his Administrative remedies with respect to his RFRA claim, he did not have re-exhaust his Administrative remedies regrading his RLUIPA claim.

Since RLUIPA (2000) was enacted after Plaintiff's claim arose in this case (2003), we find that he was attempting to assert a claim under RLUIPA, and not RFRA. The *DeHart* Court also stated that "RLUIPA essentially reiterates the language of RFRA as it applies to institutionalized persons." *Id.* at 274. The Court stated that "it cannot be argued that RLUIPA does not apply the same standard to prisoner free exercise claims as did RFRA." *Id.* The Court stated that "RLUIPA makes no change to the standard by which prisoners' free exercise claims are reviewed." *Id.*[14]

---

[13]In the case of *Williams v. Bitner*, 285 F. Supp. 2d 593, (M.D. Pa. 2003), this Court found RLUIPA was constitutional.

[14]We note, in light of *DeHart*, that Plaintiff should be deemed as raising a claim under RLUIPA in place of his RFRA claim in his Amended Complaint. Further, RLUIPA was enacted in September 2000, before Plaintiff's claim arose in this case with the December 23, 2003 denial of his January 29, 2003 request for religious accommodation.

In *Branch v. Russian*,  2005 WL 1137879, * 7 (M.D. Pa.), this Court stated:

> Individuals have a constitutionally protected right to follow the
> religious teachings and practices of their choice.  *Employment Div. v.
> Smith*, 494 U.S. 872, 881-83, 110 S.Ct. 1595, 108 L.Ed.2d 876
> (1990). This right may be limited by law of general applicability,
> restricting both religious and non-religious conduct, but reasonable
> accommodations for religious observance may be required in
> certain circumstances.  *Id.; see also Wisconsin v. Yoder*, 406 U.S. 205,
> 214-15, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).  Particularly in the
> prison context, where inmates are precluded from engaging in a
> variety of otherwise permissible activities, officials may be
> required to provide exemptions from restrictions that place a
> "substantial burden" on an inmate's adherence to "sincerely held
> religious beliefs," unless the officials offer compelling reasons for
> refusing such accommodation.  *See* 42 U.S.C. § 2000cc-1(a);
> *see also Smith*, 494 U.S. at 884; *Turner*, 482 U.S. at 89-91.

In *Branch*, the Plaintiff inmate claimed that DC-ADM 807, hygiene and grooming policy,

violated his right to free exercise of religion.  This Court found that Plaintiff Branch failed  to establish

the threshold element of such a claim, since he did not explain how long hair affected his religious

beliefs and only alleged that he took a vow requiring him to keep long hair.  Thus, Plaintiff Branch

did not establish a burden on the exercise of his religion.

As discussed above, we have found that Plaintiff has raised Constitutional claims under the

First Amendment and Fourteenth Amendment[15], as well as a claim under RLUIPA.  Plaintiff states

in his Brief (Doc. 62, p. 8) that "[h]e needed a hair exemption in order to more readily comply with

the beliefs and practices [of Rastafari]."  Plaintiff submitted evidence that he has been a registered

---

[15]  The Court in *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 528 (E.D. Pa. 2002), stated that
"Inmates clearly retain protections afforded by the First Amendment, including its directive that
no law shall prohibit the free exercise of religion."*O'Lone v. Estate of Shabazz,* 482 U.S. 342,
348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citation, punctuation omitted).

Rastafarian since August 2002, and that Defendant Reitz found he was sincere in his beliefs. (Doc. 62 App., p. 4). However, based on the evidence, none of the Defendants named in this action have any personal involvement with the alleged violations of Plaintiff's Constitutional rights under the First Amendment and Fourteenth Amendment, or with violating his rights under RLUIPA. Defendants Rackovan's and Burks' only involvement with this case were their respective responses to Plaintiff's grievance concerning his hair length exemption request. The evidence also shows that Defendants Tennis and Reitz clearly did not violate Plaintiff's Constitutional rights or rights under RLUIPA, since they approved his request.

Plaintiff has not shown that any Defendant in this case was personally involved in violating his free exercise of religious rights under the First Amendment and Fourteenth Amendment. While Defendants argue in their opposing Brief to Plaintiff's Summary Judgment Motion that Plaintiff is not entitled to summary judgment regarding his free exercise claims because there are material factual disputes as to whether his religious beliefs are sincerely held (Doc. 78, pp. 5-6), none of the Defendants played any role in the decision to deny Plaintiff's religious accommodation request for a hair length exemption.  In fact, the evidence shows that both Defendants Reitz and Tennis, the present Defendants who were involved with Plaintiff's request, approved the Plaintiff's request based, in part, on Reitz's determination that Plaintiff's religious beliefs and practice seemed quite sincere. (Doc. 62, App., p. 4). Factual disputes may exist between Plaintiff and the officials of the DOC Central Office involved with the ultimate denial of his request over the sincerity of Plaintiff's religious beliefs, the relevancy of Plaintiff's prior request for a hair length exemption under a different religion, and whether the Plaintiff was entitled to the grant of his request. However, these

disputes with respect to  the Plaintiff's RLUIPA claim and free exercise of religion claim do not lie

with our individual Defendants.  Rather, they are factual disputes with respect to the RLUIPA claim

against DOC Central Office officials who were not named as Defendants herein.[16]

Thus, we do not find that Plaintiff has stated a First Amendment and Fourteenth Amendment

claim against any Defendant in this case.   Nor do we find that Plaintiff has stated a claim under the

RLUIPA against any of the named individual Defendants.[17]

_____

[16]Plaintiff states that, under the DC-ADM 807 policy, once his vote sheet with respect to his hair length exemption request was approved by the Defendants (Tennis and Reitz), his request should have been granted.  Plaintiff states that it did not have to be sent to DOC Headquarters under the policy.  (Doc. 62, p. 8).  Plaintiff cites to Section VI.  E. 7. of the policy (Doc. 62, Ex. A), which essentially states that the prison superintendent shall issue an approval or disapproval after the chaplain determines the validity of the inmate's request.  It states that the chaplain then notifies staff and the inmate and the notice is placed in the inmate's central file.  The policy does not indicate if the DOC Central Office, once it receives a copy of the notice for the inmate's central file, can then deny the request, as was done in Plaintiff's case.  The policy also states that it does not create any rights in any person.   (Doc. 62, Ex. A, p. 2, Section VIII.).  Regardless, our individual Defendants did not play any role in violating Plaintiff's First Amendment and Fourteenth Amendment rights or his rights under RLUIPA.

[17]In his Brief, Plaintiff addresses whether Defendants are entitled to qualified immunity.  (Doc. 62, p. 7).  He concludes that they are not.  Defendants did not raise qualified immunity as a defense to Plaintiff's constitutional claims or claim under RLUIPA.
This Court in *Branch* found that Defendants were entitled to qualified immunity with respect to the inmate's claim that the grooming policy violated his right to free exercise of religion, since courts had overwhelmingly upheld the Constitutionality of restrictions on inmates regarding their hair length. The *Branch* Court noted as follows:

> The court also finds that defendants are entitled to qualified immunity
> on the free exercise claims.  Officials are entitled to immunity from
> suit for civil rights violations if their conduct did not violate a
> "clearly established statutory or constitutional right [ ] of which a
> reasonable person would have known." *Wilson v. Layne*, 526 U.S.
> 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).  Lower courts
> have overwhelmingly upheld the constitutionality of hair-length

## VI.   Recommendation.

Based on the foregoing, it is respectfully recommended that Defendants' Motion for Summary

Judgment **(Doc. 63)** be granted, and that Plaintiff's Motion for Summary Judgment **(Doc. 60)** be

---

> restrictions, *see, e.g., Wilson v. Schillinger*, 761 F.2d 921, 925-27
> (3d Cir. 1985), including exemptions such as that at issue in his case,
> *see, e.g. Iron Eyes*, 907 F.2d at 811 n. 3, 816, and recent Supreme
> Court cases dealing with prison regulations suggest that officials
> are entitled to substantial deference in their assessment of
> penological needs, *see Turner*, 482 U.S. at 89-91.  The right
> asserted by Branch, even if supportable under caselaw, was not
> clearly established at the time of these events.  Defendants are
> thus entitled to qualified immunity on these claims.  *See
> Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d
> 272 (2001).

*Branch*, 2005 WL 1137879, * 9, n. 17.

In *Scott v. Beard*, 2006 WL 2645150, * 5  (M.D. Pa.), this Court again found that
Defendant prison officials were entitled to qualified immunity with respect to Plaintiff's claim for
monetary damages since they "could have reasonably believed that the grooming policy
imposed by ADM-807 did not violate a prisoner's rights under RLUIPA."

Based on *Branch*, we find that, even if Plaintiff did show the personal involvement of our
Defendants with respect to his Constitutional claims and claim under RLUIPA, they would be
entitled to qualified immunity with respect to Plaintiff's claim for monetary relief.  Plaintiff may
be able to file a new action raising a RLUIPA claim against the proper DOC officials regarding
his claim for injunctive relief (Doc. 6, p. 3, Relief) if he believes that he is being subjected to
ongoing violations of federal law with respect to the denial of his request for a hair length
exemption.

denied.  It is further recommended that Judgment be entered in favor of Defendants and against

Plaintiff.




                                           **s/ Thomas M. Blewitt** _____
                                           **THOMAS M. BLEWITT**
                                           **United States Magistrate Judge**

**Dated: November 13, 200**6

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN LEE THOMPSON, | : | CIVIL ACTION NO. **3:CV-04-2547** |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| PA DOC,  et al., | : | |
| | : | |
| Defendants | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **November 13, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

24

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                    s/ Thomas M. Blewitt
                              THOMAS M. BLEWITT
                              United States Magistrate Judge


**Dated: November 13, 2006**