IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN LEE THOMPSON,  :
    Plaintiff  :  NO. 3:CV-04-2547
      :
v.  :  (JUDGE NEALON)
      :  (MAGISTRATE JUDGE BLEWITT)
PENNSYLVANIA DEPARTMENT OF  :
CORRECTIONS, ET AL.,  :
    Defendants  :

**MEMORANDUM and ORDER**

FILED SCRANTON FEB - 1 2007

**Introduction**

On November 24, 2004, Plaintiff, an inmate currently incarcerated at the SCI-Rockview, commenced the present civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1).[1] An amended complaint filed on January 14, 2005 alleges that the Defendants have violated his religious rights by denying his request concerning a hair length exemption, although he has met all the Pennsylvania Department of Corrections ("DOC") requirements for a religious accommodation for a hair length exemption. (Doc. 6). Named as Defendants are the Pennsylvania Department of Corrections, SCI-Rockview, Superintendent Franklin Tennis, Thomas Reitz, Head Chaplain, Sharon Burks, Chief Grievance Officer for the DOC, and Jeffrey Rackovan,

---

[1] The action was originally filed in the United States District Court for the Eastern District of Pennsylvania but was subsequently transferred tot his court inasmuch as Plaintiff is confined within this district.

Grievance Manager at SCI-Rockview. The parties have filed Motions for Summary Judgment (Docs. 60, 63) which have been fully briefed. (*See* Docs. 61-62, 75-81, 84, 87). On November 13, 2006, United States Magistrate Judge Thomas M. Blewitt issued a Report and Recommendation in this matter (Doc. 90), recommending that the Defendants' Motion for Summary Judgment (Doc. 63) be granted and that the Plaintiff's Motion for Summary Judgment (Doc. 60) be denied. On November 20, 2006, Plaintiff filed Objections to the Report and Recommendation and thereafter filed a Supporting Brief (Docs. 91-92). Defendants filed their Brief in Opposition to Plaintiff's Objections on December 11, 2006 (Doc. 94). Plaintiff then filed a document captioned "Written Objection" on December 18, 2006. (Doc. 95).[2] The matter is now ripe for disposition and, for the reasons stated below, the court will adopt the Report and Recommendation.

---

[2] Plaintiff's "Written Objection" (Doc. 95) concerns only the timeliness of the Defendants' Brief in Opposition to his Objections. Plaintiff correctly notes that Defendants had ten (10) days to respond to his Objections. However, in calculating the time under FRCP 6, it should be noted that November 23, 2006 was the Thanksgiving holiday, which is excluded from the time computation. Therefore, the first business day after they acknowledged service of his Brief in Support of his Objections on November 22, 2006 was November 24, 2006, on which date the period of time for Defendants to file their response commenced. Inasmuch as Saturdays and Sundays are excluded from this time computation under FRCP 6(a), and further, because FRCP 6(e) affords an additional three (3) days to the time period, Defendants' Brief in Opposition to Plaintiff's Objections was timely filed.

**Background**

The DOC has an inmate Hygiene and Grooming Policy, DC-ADM 807. The Policy provides, in pertinent part "Hair that does not fall below the top of the collar (afro styles no longer than four inches) shall be permitted[.] Section E of DC-ADM 807 sets forth the procedures that an inmate must follow in order to obtain an exemption to the grooming policy for legitimate religious purposes, and provides as follows:

> Exceptions to the provisions of this directive may be granted for legitimate religious reasons on a case by case basis. The following procedures are to be followed to request/obtain a religious exemption:
>
> 1. The inmate must provide a written request for a haircut exemption to the Facility Chaplaincy Program Director (F.C.P.D.)
>
> 2. The request must indicate the religious conviction upon which the exemption is based.
>
> 3. All inmates requesting a haircut exemption on the basis of religious conviction must supply something in writing confirming the inmate's participation in the particular religion[.]
>
> 4. The F.C.P.D., after speaking with the inmate, determines the validity of the request.
>
> 5. The F.C.P.D. shall notify the Superintendent or designee of the determination and recommendation[.]
>
> 6. The Superintendent's decision is sent to the F.C.P.D. who, in turn, notifies the appropriate staff and inmate[.]

7. In cases where the F.C.P.D. cannot make an appropriate determination, the Facility Chaplaincy Program Director must submit all written information to the Administration of Religion and Family Services for review and recommendation.

8. The exemption will be lifted if there is a change in the status of the inmate, e.g. converts to another religion which does not require an exemption to hair length.

DC-ADM 807-2-3.

Plaintiff requested that the prison register him as a Rastafarian and that he be granted a religious accommodation regarding his hair length. Although both Defendants Reitz and Tennis voted in favor of approving Plaintiff's request for a hair length exemption, the request was denied at the DOC Central Office by the Acting Director of Bureau Inmate Services, William Harrison. Inasmuch as he had previously sought a hair length exemption under a different religion, the denial was based on the determination that Plaintiff's religious beliefs were not sincere. Afer being notified by Defendant Reitz that the request was denied, Plaintiff filed a grievance regarding the hair length exemption. Defendant Reitz responded to the grievance, stating that, since the proper procedures were followed, the institution was required to abide by the decision of the DOC Central Office.[3] Plaintiff then appealed the denial of his grievance to Defendant Tennis, who affirmed the initial review

---

[3] Plaintiff disputes that the proper procedures were followed.

denying his grievance. Plaintiff sought final review by appealing the second denial to Defendant Burks, who also affirmed the denial of the grievance. The present action followed, in which Plaintiff alleges violations of his religious rights under the First and Fourteenth Amendments, as well as violations of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, *et seq.*.

**Discussion**

*(A) Standard of Review*

When objections to a report and recommendation have been filed, under 28 U.S.C. § 636(b)(1)(c), the court must make a *de novo* consideration of those portions of the report to which there have been objects. *See* Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In so doing, the court may accept, reject, or modify, in whole or in part, the findings and recommendations contained in the report. 28 U.S.C. § 636(b)(1); Local Rule 72.31. Further, the court may, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 676 (1980); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

*(B) First and Fourteenth Amendments*

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. CONST.

AMEND. I. In <u>Cantwell v. Connecticut</u>, 310 U.S. 296, 303 (1940), the Supreme Court held that the First Amendment was incorporated by the Fourteenth Amendment and, thus, was applicable to the states.

It is well established that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." <u>Bell v. Wolfish</u>, 441 U.S. 520, 545 (1979). "Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion." <u>O'Lone v. Shabazz</u>, 482 U.S. 342, 348 (1987) (citations omitted). Constitutional rights, however, including the right to practice religion, may be reasonably restricted in order to facilitate valid penological objectives, such as deterrence of crime, rehabilitation of prisoners, and institutional security. *See* <u>Jones v. North Carolina Prisoners' Labor Union</u>, 433 U.S. 119, 132 (1977); <u>Pell v. Procunier</u>, 417 U.S. 817, 822-23 (1974). Accordingly, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." <u>Pell</u>, 417 U.S. at 822.

The Court of Appeals for the Third Circuit has upheld the validity of the hair length regulations of DC-ADM 807. *See* <u>Wilson v. Schillinger</u>, 761 F.2d 921 (1985). <u>Cole v. Flick</u>, 758 F. 2d 124 (3d Cir.), *cert. denied*, 474 U.S. 921 (1985), <u>Dreibelbis v. Marks</u>, 742 F.2d 792 (1984). The Court of Appeals Circuit found that the

justifications for the policy, including, *inter alia*, (1) internal security, insofar as long hair could be used to conceal or transport contraband, including weapons or drugs, or by thwarting identification; (2) sanitation concerns, in that long hair increases the risk of lice and infection, particularly with respect to those inmates working in mail and food services; and (3) to prevent the possibility that institutional security would be jeopardized by selective enforcement of institutional directives, were all clearly legitimate in that they are directly related to prison security, and that DC-ADM 807 did not represent an exaggerated response to those concerns. *See* Cole, *supra*. Consequently, inasmuch as Plaintiff does not appear to challenge the constitutionality of the hair length regulations but rather disputes only their application of the exemption which he was denied, review will be limited to this issue.

*(C) Report and Recommendation*

Magistrate Judge Blewitt first determined that Plaintiff had exhausted his administrative remedies. The Report and Recommendation concluded that although he asserted violations of his religious rights under the RFRA, he could not succeed on this claim inasmuch as the RFRA[4] is inapplicable to the States and its employees. DeHart v. Horn, 390 F.3d 262, 264 (3d Cir. 2004) (quoting City of Boerne v. Flores,

---

[4] As noted in the Report and Recommendation, the Religious Land Use and institutionalized Persons Act ("RLUIPA") replaced the RFRA.

521 U.S. 507 (1997)). Moreover, inasmuch as SCI-Rockview and the DOC are not "persons" subject to liability under §1983, they should be dismissed as improper Defendants. *See* Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).

Plaintiff contends that the Report and Recommendation made the following errors:

1. Defendants caused his religious rights to be violated when it denied him the hair length accommodation, despite the fact that he acquired six (6) votes in favor of the accommodation from prison staff, in violation fo the RLUIPA.

2. The Report and Recommendation erroneously determined that Defendants Tennis, Rackovan and Burks "played no role in the decision to deny Plaintiff's religious accommodation request for a hair length exemption" inasmuch as they chose to ignore the vote sheet, the chaplain's recommendation and Plaintiff's religious rights and denied the accommodation, allowing the constitutional violation to occur.

3. Plaintiff's "sincerity" with respect to the hair length exemption is a disputed material fact precluding summary judgment.

4. Qualified immunity is negated by the fact that the DOC concedes that hair and head covering can have religious implications.

5. Plaintiff should have been granted leave to amend his complaint to add the responsible DOC personnel.[5]

---

[5] Plaintiff also raises an objection with respect to Defendants being afforded additional time to file a brief in opposition to Plaintiff's pending motion for Summary Judgment (Doc. 74). Although the order stated that no further extensions would be granted, Plaintiff maintains that this position was not enforced when Defendants

(Doc. 92).

Liability under section 1983 liability is premised upon a deprivation of a federal right by a person acting under the color of state law. *See* 42 U.S.C. § 1983; *see also* Cohen v. City of Philadelphia, 736 F.2d 81, 83 (3d Cir. 1984). To the extent Plaintiff seeks to impose liability against Defendants for their role in denying his administrative grievances and appeals therefrom, these Defendants are entitled to summary judgment based upon the well-established principle that prisoners have no constitutionally protected right to a grievance procedure. *See* Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Wilson v. Horn, 971 F. Supp. 943, 946 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998); McGuire v. Forr, Civ. A. No. 94-6884, 1996 WL 131130, at *1 (E.D. Pa. March 21, 1996), *aff'd*, 101 F.3d 691 (3d Cir. 1996). While prisoners do have a constitutional right to seek redress of their grievances from the government, that right

---

sought, and were granted, additional time to file a reply to Plaintiff's brief in opposition to defendants' Motion for Summary Judgment. (Doc. 86). This, however, is not inconsistent since Defendants' were seeking additional time for the submission of different filings, *to wit.*, their brief in opposition to Plaintiff's motion and their reply to his brief in opposition to their motion. Inasmuch as the motion had already been granted and, in fact, the reply had already been filed, when Plaintiff's objection to the extension of time was filed on September 18, 2006, it was denied and was moot. Under FRCP 6(b), it is within the discretion of the court to grant, or deny, such requests. Accordingly, this objection is without merit.

is the right of access to the courts and such a right is not compromised by the failure of the prison to address an inmate's grievance. *See* Hewitt v. Helms, 459 U.S. 460, 467 (1983) (an inmate does not have a protected interest in the prison grievance proceeding); *see also* Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (there is "no constitutional right to participate in grievance proceedings"); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to and resolution by that procedure).

Plaintiff contends that he has stated viable claims against the DOC and SCI-Rockview under Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978), which provides that a municipality or governmental entity can be liable under § 1983 when the alleged constitutional violation implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom. Id. at 694. Defendants correctly observe that Plaintiff failed to raise a Monell claim in his amended complaint. In failing to timely raise this claim, he cannot now assert it in order to defeat summary judgment.

To the extent he asserts a claim under the RLUIPA, the constitutionality of DC-ADM 807 is well-settled and its validity has been consistently upheld by the Court of Appeals for the Third Circuit. *See* Wilson v. Schillinger, 761 F.2d 921 (3d Cir.1985);

Cole v. Flick, 758 F.2d 124 (3d Cir.1985); Dreibelbis v. Marks, 742 F.2d 792 (3d Cir.1984); *see also* Poe v. Werner, 386 F.Supp. 1014 (M.D. Pa. 1974). Additionally, "many federal courts have upheld the validity of prison grooming policies under RLUIPA or its predecessor, RFRA, concluding that the policies serve compelling governmental interests of prison safety and security by the least restrictive means." Scott v. Beard, 2006 WL 2645150, *5 (M.D. Pa. 2006) (Caputo, J.) (citations omitted). Accordingly, Plaintiff's objection lacks merit and will be rejected.

Defendants next aver that, regardless of securing the six (6) votes on the vote sheet and the Chaplain's determination that Plaintiff's religious beliefs were sincerely held, they are entitled to summary judgment because there is no constitutional right to a grievance procedure. Although Plaintiff argues that the proper procedures were not followed and that his Due Process rights were violated, his claim is without merit. Inasmuch as a prison grievance procedure does not confer any substantive constitutional right upon prison inmates, prison officials' failure to comply with the grievance procedure is not actionable. Moreover, Defendants assert that his sincerity is not a disputed material fact, arguing that regardless of the sincerity of a belief, an inmate has no right to a grievance procedure or appeal therefrom and, thus, he has no right to an exemption to the hair length regulation.

Moreover, it bears repeating that Defendants Tennis and Reitz voted in favor of

11

Plaintiff's requested exemption. Regardless of this endorsement, the final decision denying the request rested ultimately with the Central Office. Consequently, Plaintiff cannot establish the necessary personal involvement by these Defendants to establish liability under § 1983. See Rizzo v. Goode, 423 U.S. 362 (1976); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (a defendant in a civil rights action must have personal involvement in the alleged wrongs); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Inasmuch as Plaintiff does not allege, nor can he demonstrate, that these Defendants were personally involved in denying his request for an accommodation, he cannot state a cause of action against them under § 1983.

Finally, the objections as to the issues of qualified immunity, leave to amend and the identity of DOC personnel, will be denied. The Report and Recommendation does not base the grant of summary judgment in favor of defendants on qualified immunity and, therefore, that is not an issue herein. Further, Defendants correctly note that Plaintiff never sought leave to amend and, consequently, he cannot now assert via objection to the Report and Recommendation his own failure to seek such relief.[6] Moreover, Defendants maintain that the names of DOC personnel sought by

---

[6] What curative effects an amended pleading naming DOC personnel would have on the outcome of the present action is dubious, at best.

Plaintiff in discovery were provided to him. Consequently, these objections are meritless and will be denied.

**Conclusion**

After careful review and in the exercise of sound judicial discretion, the court will adopt the Magistrate Judge's Report and Recommendation, and Defendants' Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment (Doc. 60) will be denied. An appropriate order follows.


Date: February 1, 2006                            s/ William J. Nealon
                                                  United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN LEE THOMPSON,
    Plaintiff   :  NO. 3:CV-04-2547

v.  :  (JUDGE NEALON)
  :  (MAGISTRATE JUDGE BLEWITT)

PENNSYLVANIA DEPTARTMENT OF
CORRECTIONS, ET AL.,
    Defendants

FILED
SCRANTON
FEB - 1 2007
PER ___
DEPUTY CLERK

**ORDER**

ACCORDINGLY, THIS 1st DAY OF FEBRUARY, 2007, IT IS HEREBY ORDERED THAT:

1. The Report and Recommendation (Doc. 90) is ADOPTED.

2. Defendants' Motion for Summary Judgment (Doc. 63) is GRANTED

3. Plaintiff's Motion for Summary Judgment (Doc. 60) is DENIED.

4. The Clerk of Court is directed to close this case.

                        s/ William J. Nealon
                        United States District Judge